**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **LILLIAN JACQUEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-15-CV-26-RFC** |
| | § | |
| **COMPASS BANK** | § | |
| **D/B/A BBVA COMPASS** | § | |
| **Defendant.** | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT
## AND DISMISSAL OF COUNTERCLAIM WITHOUT PREJUDICE

In this action, removed from state court, Plaintiff asserts claims against Defendant for unauthorized practice of law, fraud, and violations of the Deceptive Trade Practices Act ("DTPA"). Before the Court are Plaintiff's partial motion for summary judgment, Defendant's motion for summary judgment, and related pleadings. For the reasons stated below, the Court denies Plaintiff's partial motion for summary judgment and grants Defendant's motion for summary judgment.

## PROCEDURAL HISTORY

Plaintiff filed her Original Petition in state court on October 21, 2014. (Doc. 1-1:10) Plaintiff filed her Second Amended Petition on January 22, 2015. (Doc. 1-1:32-83) The cause was removed to federal court on February 5, 2015. (Doc. 1) Defendant filed a motion to dismiss on February 20, 2015 (Doc. 4), which was denied by United States District Court Judge Frank Montalvo on March 4, 2015, for failure to comply with local rules. (Doc. 5) Plaintiff filed a motion to remand on March 6, 2015 (Doc. 6), which Judge Montalvo denied on March 19, 2015. (Doc. 15) On March 18, 2015, Defendant filed an Answer to Plaintiff's Second Amended Petition. (Doc. 14) Both parties filed a consent to trial by a United States Magistrate Judge on

1

April 9, 2015, and the case was reassigned to this Court on April 13, 2015.   (Docs. 17-19)   This Court granted the parties' request to extend the deadlines set forth in the scheduling order that had been entered by Judge Montalvo, and entered a new scheduling order.   (Docs. 10, 58)   Defendant filed a motion for summary judgment on May 1, 2015 (Doc. 20), which this Court eventually denied on December 17, 2015, after granting the parties additional time to conduct discovery. (Docs. 25, 55)   The Court has addressed several discovery disputes between the parties.   (Docs. 31, 32, 34, 35, 43, 45, 47, 54)

The current scheduling order was entered by this Court on January 13, 2016, with a discovery deadline of February 12, 2016, a dispositive motion deadline of April 8, 2016, and a jury trial setting of June 6, 2016.   (Doc. 58)   The live pleadings are Plaintiff's Second Amended Complaint (Doc. 1-1:32-83) and Defendant's Answer to Plaintiff's Second Amended Complaint and counterclaim for attorney fees.   (Doc. 14).

Defendant filed a Second Motion for Summary Judgment on April 8, 2016 (Doc. 79), to which Plaintiff responded (Doc. 82), Defendant filed a reply (Doc. 88), and Plaintiff filed a sur-response (Doc. 107); Defendant also filed a motion to strike Plaintiff's Response (Doc. 87), to which Plaintiff filed a response (Doc. 106).

Plaintiff filed a Motion for Partial Summary Judgement on April 11, 2016 (Doc. 80), to which Defendant responded (Docs. 84, 85) along with a motion to strike Plaintiff's summary judgment evidence (Doc. 83), followed by Plaintiff's reply (Doc. 89) and response to Defendant's motion to strike (Doc. 90).

## SUMMARY JUDGMENT EVIDENCE

The facts are undisputed except where otherwise indicated.

2

In July 2011, Plaintiff visited a Compass Bank branch and saw a flyer on a teller's counter "where the customers stand before they go right or left to the teller" advertising a free consultation for estate planning services and providing a phone number.[1] (Doc. 80, Exh. D at 52)   The flyer did not state that the business advertised was associated with Defendant nor did it contain Defendant's name, logo, or trademark.   (Docs. 79:2; 80, Exh. D at 52)

Plaintiff called the number listed on the flyer and spoke with Branko Belichesky ("Belichesky").   (Docs. 79:2, Exh. J at 160; 80:4, Exh. D at 43)   Belichesky offered to meet with Plaintiff at the Compass branch where Plaintiff had seen the flyer.   (Docs. 79:2, Exh. J at 160; 80:4, Exhs. E, F; 82:4)

On or about July 7, 2011, Plaintiff walked into Compass Bank's Valley Branch to meet with Belichesky and observed Belichesky speaking with a Compass Bank employee, "like when a manager [sits] down with another employee and they're having a comfortable conversation." (Docs. 80:4-5, Exh. D at 59-61; 82:4)   Defendant allowed Belichesky to meet with Plaintiff in its conference room to have an estate/trust planning consultation.   (Docs. 80:5, Exhs. D at 59-61, E, F; 82:5)

At the meeting, Belichesky told Plaintiff that he is a semi-retired attorney and said or implied that estate/trust matters were his specialty and that he had many years of experience in estate/trust planning services.   (Docs. 79:2, Exh. J at 164; 80:4, Exh. E, F; 82:4)   Belichesky provided literature to Plaintiff, none of which had Compass' name or logo on it.   (Doc. 79:2, Exhs. J at 165-170, R)   Plaintiff then decided to hire Belichesky to perform legal services,

---

[1]  The exact nature of the flyer is disputed, with Defendant claiming the flyer stated "free advertisement" and contained information for six businesses including a bakery, a florist, an auto service, a realtor, a salon, and estate planning services by Branko Belichesky with a phone number and stating "free consultation".   (Doc. 79:2, Exh. A) Plaintiff does not have a copy of the flyer she saw, but denies that she saw Defendant's flyer in Exhibit A.   (Doc. 80, Exh. D at 43-45)   Plaintiff describes the flyer as an 8 x 10 piece of paper containing only an advertisement for "estate/trust planning, free consultation" with a phone number, with no name and no picture.   (Doc. 80, Exh. D at 43-45, 51-52)

including the creation of a trust.   (Doc. 79:2, Exh. J at 170-171)   Plaintiff never again saw Belichesky inside the Compass branch.   (Docs. 79:3, Exh. J at 59; 84:2)   Plaintiff knew Belichesky had his own office.   (Doc. 79:3, Exh. J at 57)

Plaintiff did not ask Belichesky if he worked for Compass and no one at Compass ever told her that Belichesky worked for Compass; she did not ask.   (Doc. 79:3, Exh. J at 60)   No one at Compass Bank ever caused Plaintiff to think that Belichesky was an actual employee of Compass Bank.   (Doc. 79:3, Exh. J at 337)   Plaintiff admits that no Compass Bank employee had anything to do directly with her trust. (Docs. 79:3, Exh. J at 29; 84:3)

Belichesky told Plaintiff that it would cost $2,500, plus filing fees, to prepare a trust for herself, her husband, and their children.   (Docs. 80:6; Exhs. D at 89-91, 172, F; 82:6) Plaintiff paid Belichesky approximately once per month via checks made payable to Belichesky, individually, from October 11, 2011, to July 2012, and three times in June 2012.   (Doc. 79:4, Exhs. B, J at 84-96, 174-182, 257-258)   Following Belichesky's instructions, Plaintiff wrote two checks (totaling $450) to Mitchell Esper ("Esper"), a licensed Texas attorney, for services in connection with the formation of the trusts, because Belichesky said "he needed to have an attorney look at the trust document." (Doc. 79:3, Exh. J at 92)   Plaintiff acknowledged that Esper "blessed" the transaction and although he was an attorney he erred in his advice concerning the trust. (Doc. 79:3, Exh. J at 222)

Plaintiff never wrote any checks to Compass for trust services, no Compass employee performed any of the work (Doc. 79:4, Exh. B), and Plaintiff never spoke with any Compass employee concerning the work Belichesky was doing for her until January 2013, several months after Belichesky completed the work.   (Doc. 79:4, Exh. J at 161-162)   Plaintiff never signed an engagement letter or other contract with Compass concerning the trust services.   (Doc. 79:4, Exh.

4

B)  Plaintiff had experience hiring attorneys, having previously worked with an attorney for two years and having hired two other attorneys and signing engagement letters with them, prior to when she met Belichesky.   (Doc. 79:4, Exh. J at 14, 16-21)

On or about July 27, 2011, Belichesky instructed Plaintiff and her husband to sign four trust transfer deeds so that he could transfer their various interests in real estate into the trust he was preparing for them.   (Docs. 80:6, Exhs. D at 223-224, 228, 230-233, K; 82:6)   Although Belichesky had yet to prepare the trust into which Plaintiff's and her husband's real estate holdings were to be transferred, on July 27, 2011, and October 10, 2011, Belichesky filed three trust transfer deeds with the El Paso County Clerk's Office using the false name "Charlie Brown."   (Docs. 80:6, Exhs. D at 203-205, 223-225, L; 82:6)

Belichesky advised Plaintiff in incorporating a business for her in the state of Delaware, which she wanted to name "Hacienda Enterprises, Inc."   (Docs. 80:6, Exh. D at 91-92, 251-252; 82:6)   Belichesky's charges to Plaintiff began totaling over $2,500, exclusive of filing fees. (Docs. 80:6, Exh. D at 92; 82:6)   In early March 2012, Belichesky filed a certificate of incorporation in the state of Delaware for "Hacienda Enterprises, Inc." on behalf of Plaintiff. (Docs. 80:6-7, Exhs. D at 202-203, H; 82:6)   On or about April 3, 2012, Plaintiff, having received the certificate of incorporation, filed an application to register the newly-formed corporation, "Hacienda Enterprises, Inc." with the state of Texas.   (Docs. 80:7, Exhs. I, J; 82:7)   Days later, Plaintiff received a phone call from the State of Texas informing Plaintiff that the name of her corporation, "Hacienda Enterprises, Inc., " is not available for use in Texas. (Docs. 80:7, Exhs. D at 251-252, J; 82:7)   Plaintiff knew as early as March 2012 that Belichesky's work regarding formation of a corporation had been improperly performed.   (Docs. 79 at Exhs. J at 291, K at 18-19; 84:17, Exhs. B at 291-292, P at 18-19; 88:5)

On or about June 6, 2012, Belichesky had Plaintiff and her husband sign another trust transfer deed to transfer another one of their real estate interests into the trust.   (Docs. 80:7, Exhs. D at 215-217, M; 82:7)   Belichesky filed this trust transfer deed with the El Paso County Clerk's Office using Plaintiff's husband's name, "Carlos Diaz, Jr.," and provided an incorrect phone number.   (Docs. 80:7, Exhs. D at 204, 215, N; 82:7)   On or about June 26, 2012, the El Paso Central Appraisal District returned the trust transfer deed filed on June 8, 2012, to Plaintiff because it had incorrect information.   (Docs. 80:7, Exhs. D at 205-207, O; 82:7)

In September 2012, Belichesky gave Plaintiff the irrevocable trust she had asked him to create, which she immediately noticed contained many critical errors, and she was unhappy with the product.   (Docs. 79:4-5, Exhs. F, J at 253; 80:8, Exhs. D at 242-249, G; 82:8)   Plaintiff's name, and the names of her children were misspelled throughout the trust.   (Docs. 80:8, Exhs. D at 242-244, G; 82:8)   Her health directive section included provisions in direct contradiction to the wishes Plaintiff communicated to Belichesky.   (Docs. 80:8, Exhs. D at 246-248, G; 82:8)

Plaintiff contacted Belichesky to make corrections, but he did not correct the errors, and Plaintiff began consulting with others.   (Doc. 79:5, Exh. J at 253-257)

On or about late October 2012, Plaintiff consulted with a licensed attorney about correcting Belichesky's trust transfer deeds and irrevocable trust and to properly form her L.L.C., and the licensed attorney informed her that the estimated total cost for the corrections would be over $3,720.   (Docs. 80:8, Exhs. D at 255-256, Q; 82:8)

In November 2012, as a result of Plaintiff's visit with the attorney who inspected the Belichesky-drafted trust transfer deeds and irrevocable trust, Plaintiff first discovered that Belichesky was not a licensed attorney, based on the attorney's advice that the irrevocable trust drafted by Belichesky was not valid legal work.   (Doc. 82:8, Exh. X (82-2:128))

On or about November 13, 2012, Belichesky received a letter from Plaintiff, after she had tried unsuccessfully to reach him by phone, demanding that she be reimbursed her money for all legal services provided.   (Docs. 79:5, Exh. J at 257-258; 80:8, Exhs. D at 254, G, P; 82:9) Plaintiff did not contact Compass to request a refund of the money she had paid Belichesky. (Doc. 79:5, Exh. J at 26-28, 296-298)   Belichesky began reimbursing Plaintiff in piecemeal payments on a monthly basis and stopped making payments to Plaintiff in March 2013.   (Docs. 80:9, Exh. D at 24-25, 276-277; 82:9)

On June 12, 2013, Plaintiff filed a complaint with the Federal Reserve.[2]   (Docs. 79:5, Exh. H; 80:9, Exhs. D at 275-276, F; 82:9)

On June 14, 2013, Plaintiff filed a complaint with the Texas State Bar and/or the Texas Unauthorized Practice of Law Committee.[3]   (Docs. 79:5, Exhs. C, J at 309-310; 82:9, Exh. R)

On July 26, 2013, Plaintiff wrote a letter to Ross & Matthews, PC, in which she stated: "It is of my personal opinion had my bank, Compass, not given Mr. Belichesky access to conduct his business in their facility nor allowed him to post 'free consultation notices in the banks Teller's section. I would not have found myself in this predicament." (Doc. 79:5, Exh. V)

---

[2]   Plaintiff characterizes the complaint as "regarding Compass Bank's provision of legal services." (Doc. 80:9; 82:9) Defendant's characterization differs.   (Doc. 79:5, Exh. H)   The exhibit reflects that Defendant is the institution identified in the complaint, but does not allege that Defendant provided legal services.   (Doc. 80, Exh. F at 3-4) Plaintiff stated "Compass should have done some screening and should not have given Mr. Belichesky permission to post a sign inside your bank, and definitely not allowed him to use the bank's facility to consult with 'clients'."   *Id.* Plaintiff's characterization is unfounded.

[3]   Plaintiff characterizes this complaint as "regarding Compass Bank's provision of legal services." (Doc. 82:9) Defendant characterizes it as a complaint against Belichesky, noting that Plaintiff did not file a complaint against Compass with that Committee. (Doc. 79:5; 84:7, citing Doc. 80, Exh. R)   The exhibit to which both parties refer reflects that the complaint was filed about Branko Belichesky, who is also listed as the respondent to the complaint. (Docs. 79, Exh. C; 80, Exh. R)   Defendant is mentioned in the narrative of the complaint only regarding having a sign posted and meeting with Belichesky in the bank's conference room, and finally, with Plaintiff stating "I do feel my bank, Compass, was negligent in providing their facility for Mr. Belichesky's personal use." (Doc. 84:7, citing Doc. 80, Exh. R)   Plaintiff's characterization of this document is unfounded.

On August 16, 2013, Plaintiff filed a report with the El Paso Police Department, stating that "approximately two years ago" she hired Belichesky to "prepare a family trust." (Doc. 79:5, Exh. F) Plaintiff filed other complaints against various people, never referring to Compass as her attorney or legal representative or as responsible for the work she hired Belichesky to perform. (Doc. 79:6, Exhs. C, D, E, F, H)

On March 7, 2014, Belichesky plead *nolo contendere* to a third-degree felony of falsely holding oneself out as a lawyer in Texas state court, in a criminal case.[4] (Docs. 80:9, Exh. B; 82:9; 84:6-7, Exhs. B at 313-314, P at 32-35) Belichesky was ordered to pay $1,700 in restitution to Plaintiff. (Doc. 84:6-7, Exhs. B at 312-314, P at 32-35) Plaintiff testified that she received payments towards the restitution and at the time of her deposition there was approximately $500 left to be paid in restitution to comply with the order. *Id.*

Plaintiff filed this action on October 21, 2014. (Doc. 1-1:10)

In May 2015, Plaintiff hired attorney Karen Carson to pull her and her husband's real estate interests out from the Belichesky-drafted trust, to properly incorporate her business, and to prepare a legal instrument to protect her and her husband's assets for posterity. (Docs. 80:9, Exhs. S at 42-43, 45, 70, T; 82:9)

Plaintiff alleges that Belichesky is not, and never was, a licensed attorney.[5] (Doc. 82:3, Exhs. B, C)

---

[4] Plaintiff characterizes the criminal matter as one "whose underlying facts- and whose victim- are wholly separate and apart from Belichesky's dealings with Plaintiff." (Docs. 80:9, citing Exh. B; 89:2, Exh. P) Defendant contests this characterization based on the text of Exhibit B, which identifies the victim as "Lillian Juarez" and Plaintiff's deposition testimony in which she admitted that she was the victim identified in the criminal action, that her name had been misspelled. (Doc. 84:6-7, Exh. P at 33)

[5] Defendant argues that such inference is not supported by the referenced exhibits which indicate that such records are not necessarily complete. (Doc. 83:2-3, citing Doc. 80, Exh. C) The exhibit states that records of admission to the bar prior to 1927 are not necessarily complete. (Doc. 80, Exh. C) The Court does not find this admission to undermine Plaintiff's characterization of the facts contained therein.

## DISCUSSION

Defendant's Second Motion for Summary Judgment argues that Plaintiff's DTPA and unauthorized practice of law/legal malpractice tort claims are barred by the statute of limitations, and that Plaintiff cannot establish the required elements of his fraud claims.   (Doc. 79) Plaintiff's Motion for Partial Summary Judgment seeks judgment only on the merits of his DTPA claim.   (Doc. 80)

**I.      Summary Judgment Standard**

Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A material fact is one that can affect the outcome of the litigation under the substantive, governing law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A genuine dispute is one that can only be determined by a trier of fact because a reasonable jury could resolve the disputed fact in favor of the nonmovant.   *Id.*, at 248-249; *Tiblier v. Dlabal*, 743 F3d 1004, 1007 (5th Cir. 2014).

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial.   *Id.*, at 324-325.

A plaintiff moving for summary judgment must satisfy its burden by submitting summary-judgment proof that establishes all elements of its claim as a matter of law.   *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996).

A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim, or (2) showing there is no evidence to support an essential element of plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 322-323. A defendant seeking summary judgment on an affirmative defense must show the absence of a genuine dispute of material fact and establish each element of its defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

On cross-motions for summary judgment, the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

In reviewing a motion for summary judgment, the court may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods. Co.,* 530 U.S. 133, 150-151 (2000). Instead, in reviewing the record as a whole, the court should give credence to the evidence favoring the nonmovant as well as evidence favorable to the moving party that is uncontradicted and unimpeached, at least to the extent that such evidence comes from disinterested witnesses. *Id*. Further, all reasonable and justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255. "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper. … If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Kelley v. Price-Macemon, Inc*., 992 F. 2d 1408, 1413 (5th Cir. 1993) (internal citations omitted). Thus, even when the basic facts are undisputed, if reasonable minds could reach different conclusions regarding the inferences to be drawn from

such facts, summary judgment is improper.   *See Adickes v. S.H Kress & Co.*, 398 U.S. 144, 157 (1970).

## II.   Plaintiff's DTPA and tort claims are barred by the statute of limitations

Defendant contends that Plaintiff's tort (unauthorized practice of law/legal malpractice) and DTPA claims are barred by the two-year statute of limitations.[6]   (Doc. 79:7-8); Tex. Bus. & Com. Code § 17.565; Tex. Civ. Prac. & Rem. Code § 16.003(a).   Plaintiff contends that her injury was that Belichesky was not a licensed attorney as Defendant represented, such that she had not contracted for the quality of work she had been led to believe.   (Doc. 89:5-6)   Defendant argues that Plaintiff should have discovered that Belichesky was not a licensed attorney through the exercise of reasonable diligence, at the very latest, by September 2012, making her complaint, filed on October 21, 2014, untimely.   (Docs. 79:8; 1-1:10)   Plaintiff argues that she exercised reasonable diligence and discovered that Belichesky was not a licensed attorney in November 2012, making her complaint timely.   (Doc. 82:14, 17)

The DTPA statute of limitations provides:

All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

Tex. Bus. & Com. Code § 17.565.[7]   The Texas Supreme Court has explained that "[i]n essence, the Legislature codified the discovery rule for DTPA claims." *Gonzales v. Southwest Olshan*

---

[6]   Plaintiff's fraud claims are covered under the four-year statute of limitations.   Civ. Prac. & Rem. Code §16.004(a)(4).

[7]   In a footnote, Plaintiff argues that since the DTPA does not state that the limitation period begins to run from "the earlier or the latter of" the occurrence of any of the three enumerated dates that it begins to run at any of the three dates because the DTPA shall be liberally construed and applied to promote its underlying purposes.   (Doc. 82:12 n. 1) Plaintiff cites no case in which the DTPA limitations period was found to run from the date the plaintiff actually discovered the act where through an exercise of due diligence the plaintiff should have discovered it earlier. The Court

*Found. Repair Co., LLC*, 400 S.W.3d 52, 57-58 (Tex. 2013) (finding DTPA claim time barred based on date of actual knowledge of her injury).[8]   "The discovery rule requires a plaintiff to seek information about his injuries and their likely cause once he is apprised of facts that would make a reasonably diligent person seek information." *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (appellate court reviewing grant of summary judgment found as a matter of law that plaintiff was on notice of facts that would cause a reasonable person to make inquiries sufficient to discover the cause of her injury nearly three years before she filed suit and found that her DTPA claim was barred by limitations).   "The DTPA's statute of limitations . . . expressly mandates [plaintiff] to exercise reasonable diligence to discover the false, misleading, or deceptive act or practice upon which the DTPA action is founded." *Smith v. Gray*, 882 S.W.2d 103, 105 (Tex. App.—Amarillo 1994, writ denied) (reviewing summary judgment on limitations).   "Evidence of when [s]he *did* discover is not necessarily evidence of when [s]he *should have* discovered." *Southwest Olshan Found. Repair Co., LLC v. Gonzales*, 345 S.W.3d 431, 439 (Tex. App.—San Antonio 2011, *affirmed by* 400 S.W.3d 52 (Tex. 2013)) (alteration and emphasis in original) (reversing and rendering judgment on jury verdict in DTPA claim, finding claim barred by limitations based on finding of no evidence that plaintiff should not, through the exercise of due diligence, have discovered the relevant facts until the date she actually discovered such facts).

        In *Gray*, the appellate court determined that the statute of limitations began to run on plaintiff's DTPA claim when plaintiffs knew of the nature of their injury, which was damage in the

---

declines to construe the DTPA statute of limitations in such a manner.

[8]   Thus, the discovery rule applies regardless of whether the nature of the injury is objectively verifiable and inherently undiscoverable, which is the general rule to which Defendants refer and which would be applicable to Plaintiff's other tort claims.   *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001); (Doc. 79:8-10).

form of cracks to the structure of the house they just purchased, even though they did not discover until several months later that the damage was caused by a leak in the sewer system or that the defendant sellers had known about it and had not repaired it, because they failed to exercise due diligence in discovering the related DTPA violation.  *Gray*, 882 S.W.2d at 105.

In a more recent case, the appellate court in *Zimmerhanzel v. Green*, 346 S.W.3d 721, 724 (Tex. App.—El Paso 2011, pet. denied) (reviewing summary judgment on limitations), acknowledging that the discovery rule always applies to DTPA claims, found the claim barred by the statute of limitations because the facts and circumstances known to plaintiffs would have caused a reasonable person to inquire further and thus amounted to knowledge of the cause of action for limitations purposes because the additional information necessary was readily available and easily ascertainable.

The parties do not dispute the relevant material facts regarding the statute of limitations, only the inference to be drawn from the facts regarding whether Plaintiff exercised reasonable diligence.   "When a plaintiff knew or should have known of an injury is generally a question of fact. [] However, if reasonable minds could not differ about the conclusion to be drawn from the facts in the record, then the start of the limitations period may be determined as a matter of law." *Cadle Co. v. Wilson*, 136 S.W.3d 345, 352 (Tex. App.—Austin, 2004, no pet.) (internal citations omitted) (reviewing summary judgment on limitations), citing in part *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)(same).

 Defendant first argues that reasonable diligence in Plaintiff's hiring Belichesky to prepare her trust in 2011 should have included at least a cursory investigation of easily accessible public records to verify his credentials.  (Docs. 79:11; 88:4)  Defendant points out that whether an individual is a licensed attorney is a matter of public record.  (Doc. 88:4)  The State Bar of Texas

is charged with overseeing the membership of attorneys licensed to practice in Texas.   *Id.*, citing TEX. GOV'T CODE §§ 81.011-81.012, 81.115.   Plaintiff could have called the State Bar of Texas, visited their public website, or reviewed public records to inquire into Belichesky's status to legally practice law in Texas.   *Id.*

Defendant further argues that multiple red flags put Plaintiff on notice after she hired him that Belichesky was either not a licensed attorney or did not possess the expertise to create trust documents.   (Doc. 88:5)   In August 2011, Belichesky instructed Plaintiff to write checks to attorney Esper because Belichesky needed him to review and approve the trust document.   (Docs. 79, Exhs. J at 237, M; 88:5)   Defendant argues that "[a] person using reasonable diligence would inquire if a purportedly experienced lawyer—who told her that his expertise was in estate planning/trust creation—would require her to pay for a second lawyer to review and approve a document he prepared."   (Doc. 88:5)   Further, as early as March or April of 2012, Plaintiff knew that Belichesky's work related to the formation of a corporation was performed improperly, with him failing to determine whether the desired name of the corporation was available in Texas. (Doc. 88:5, citing Docs. 79, Exhs J at 291, K at 18-19; 80:6-7)   Finally, the faulty trust document was complete and Plaintiff received it in September 2012, and she immediately knew it was faulty and needed substantial critical corrections.   (Docs. 79, Exhs. J at 242-249, 253; 80:8, Exhs. S, T, U; 88:5, citing 1-1:34)

Plaintiff's argument seems to be that she exercised reasonable diligence by relying on Defendant's alleged misrepresentation, through its posting of the advertisement, use of the conference room, and assistance of bank employees, that Belichesky was authorized to perform estate law and was thus a licensed attorney until she actually discovered that he was not a licensed attorney in November 2012.   (*See* Doc. 89:5-8)   Even assuming *arguendo* that Defendant made

14

such misrepresentation and that Plaintiff exercised reasonable diligence in initially relying on such misrepresentation in making an appointment to meet with Belichesky or engaging his services, Plaintiff fails to address how Plaintiff continued to exercise reasonable diligence when she failed to question Defendant's alleged misrepresentation or Belichesky's credentials after Belichesky asked her to pay for another attorney to review his work, or when he failed to check the availability in Texas of the desired corporate name, or when she received the trust document riddled with errors.   Plaintiff argues that it was a mere two months after she received the faulty trust documents that she actually discovered that Belichesky was not a licensed attorney, and argues that she exercised reasonable diligence over such two month period.   (Docs. 82:18; 89:7-8)

Plaintiff argues that there is a genuine issue of material fact as to Plaintiff's reasonable diligence over such two-month period.   Defendant Belichesky's seeking payment for another attorney to approve his work, his failure regarding the corporation, and the ready availability of the online state bar databases of licensed attorneys undercuts Plaintiff's argument.   While on summary judgment, the evidence is to be viewed in the light most favorable to the nonmovant and all justifiable inferences are to be drawn in her favor, *Anderson,* 477 U.S. at 255, the Court does not find justification for the inference that Plaintiff should not have, through the exercise of reasonable diligence, discovered the fact that Belichesky was not a licensed attorney, which she argues is the basis for her DTPA claim, on or before the day she received the faulty trust documents.

The Court finds that reasonable minds could not differ about the conclusion to be drawn from the facts viewed in the light most favorable to Plaintiff, such that the Court may determine as a matter of law that Plaintiff should have discovered, through the exercise of reasonable diligence, that Belichesky was not a licensed attorney on or before the day she received the faulty trust

documents in September 2012.   Thus, Plaintiff's DTPA claim is barred by the statute of limitations.

Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, Defendant has met its burden to demonstrate that Defendant is entitled to judgment as a matter of law and Plaintiff has failed to establish that there is a genuine issue of material fact precluding judgment in Defendant's favor.   Defendant's second motion for summary judgment is granted as to Plaintiff's DTPA claim and Plaintiff's partial motion for summary judgment on the merits of her DTPA claim is denied.

Plaintiff does not address Defendant's statute of limitation argument as it applies to her tort claim of unauthorized practice of law or legal malpractice.   (Docs. 1-1:35; 79; 82)   Nor does she dispute Defendant's substantive argument that in Texas there is no private cause of action for the unauthorized practice of law.   (Docs. 79:11; 82)   Plaintiff's response addresses only the torts of fraud, fraudulent inducement, and constructive fraud.   (Doc. 82:20)   The Court finds that Plaintiff's claims of unauthorized practice of law or legal malpractice are likewise barred by the statute of limitations.   The Court therefore grants Defendant's second motion for summary judgment on these claims as well.

## III.   Fraud, Fraudulent Inducement and Constructive Fraud claims

Plaintiff asserts claims against Defendant for fraud, fraudulent inducement, and constructive fraud.   (Doc. 1-1:38-40)   Defendant's Second Motion for Summary Judgment argues that there was no evidence of any fraudulent misrepresentation or omission by Defendant upon which Plaintiff relied to her detriment, and there was no confidential or fiduciary relationship between Plaintiff and Defendant that would support any claim for constructive fraud and or fraud by nondisclosure.   (Doc. 79:15-20)   The arguments in Plaintiff's response addressing her fraud

16

claims do so solely under the theory of vicarious liability, arguing that such theory is applicable to claims of fraud, fraudulent inducement, and constructive fraud to show Plaintiff was injured by Defendant's agent or nonagent.   (Doc. 82:20-26)   Plaintiff argues that Defendant advertised the legal services to its clients, did not disassociate itself from Belichesky, and through affirmative manifestations of allowing Belichesky to use the bank's conference room, allowed Plaintiff to reasonably and justifiably rely on Belichesky's representations of being an experienced, qualified, licensed attorney.   *Id*.   Plaintiff does not explicitly go through each element of each separate fraud claim to demonstrate how the summary judgment evidence establishes or presents a question of material fact as to each element to preclude summary judgment either under a vicarious liability theory or a direct liability theory.   *See id*.

### A.  Vicarious Liability- Apparent Agency/Authority

Plaintiff maintains that based on apparent agency and authority, Defendant is vicariously liable to Plaintiff regarding her claims of fraud, fraudulent inducement, and constructive fraud. (Doc. 82:20-26)   Under Texas law, the traditional common law theories of vicarious liability are applicable to claims of fraud, fraudulent inducement, and constructive fraud.   *See Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (applying apparent authority theory to fraud claim); *Howard v. Burlington Ins. Co*., 347 S.W.3d 783, 795-797 (Tex. App.—Dallas 2011, no pet.) (applying apparent agency to fraud and fraudulent inducement); *Spring Garden 79U, Inc. v. Stewart Title Co*., 874 S.W.2d 945, 950 (Tex. App.—Houston [1st Dist.] 1994, no writ.) (applying apparent agency to fraud and constructive fraud claims).

Plaintiff alleges that Defendant allowed and knowingly permitted Belichesky, a nonagent, to hold himself out and advertise himself as a licensed attorney to all of its clients at its bank branch for over a year, to use the bank's conference room to meet with clients and render legal

17

services, to have bank employees interact with him, and to have bank employees assist him in his provision of services.[9]  (Doc. 80:15-18)   Plaintiff alleges that when she walked into the bank for her initial meeting with Belichesky, she observed him jovially and gregariously speaking with a Compass Bank employee as if he were a coworker.  (Doc. 80:18, Exh. D at 59-61)   Plaintiff argues that these actions by Defendant were affirmative manifestations of authority that induced Plaintiff to reasonably believe that Defendant had authorized Belichesky to provide legal services on its premises, and further allowed Plaintiff to reasonably and justifiably rely on Belichesky's representation of being an experienced, qualified, and licensed attorney.   (Docs. 80:19-20; 82:21)

Plaintiff argues that Defendant clothed Belichesky with the indicia of authority to practice law.[10]   Notably, Plaintiff does not explicitly argue that Defendant's multiple affirmative representations induced Plaintiff to reasonably believe that Defendant authorized Belichesky to provide legal services on its premises on Defendant's behalf or within the scope of his apparent authority as Defendant's employee or agent, binding Defendant.[11]   Apparent authority is only relevant to the extent that it falls within the scope of an established agency or apparent agency, which requires a showing that Defendant clothed Belichesky not just with the authority to perform some act, but with the authority to perform such act on Defendant's behalf to bind Defendant.

---

9 As discussed infra, there is no allegation or evidence that any employee of Defendant assisted Belichesky with his provision of services to Plaintiff; Plaintiff's deposition testimony reflects that they did not.   (See Doc. 79, Exh. J at 56-62)   Plaintiff apparently includes conduct by Defendant related to Belichesky's interaction with another customer.

10  The authority to practice law in Texas is not within the power of Defendant or any bank to grant to anyone.   Such power is vested exclusively in the Supreme Court of Texas.   Tex. Gov't Code § 82.021.

11  Although in her deposition, Plaintiff testified that she "felt [Belichesky] was associated or an agent of the bank, whether employee, supervisor, manager but associated[]" there is no evidence that the parties have identified that reflects that Plaintiff believed that Belichesky was performing the legal services she requested on behalf of Defendant within the scope of his apparent authority as an employee, supervisor, or manager of Defendant. (Doc. 79, Exh. J at 56-57)   Plaintiff's own evidence undermines any such assertion.   (Doc. 80, Exhs. D at 56-61, E, F, R)   Furthermore, as discussed infra, Plaintiff's deposition testimony and other evidence reflects that any such belief would not have been reasonably formed.

"Essential to the principal-agent relationship is the principal's right to control the acts of the alleged agent" and the principal's manifestation of consent to the agent acting on the principal's behalf. *Davis-Lynch, Inc. v. Asgard Technologies, LLC*, 472 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2015, no pet.)   Apparent agency derives only from conduct of the principal communicated to a third party, where the purported principal either knowingly permits the purported agent to hold himself out as having authority to bind the principal or the alleged principal exercises such lack of ordinary care as to clothe the purported agent with indicia of authority to bind the principal that a reasonably prudent person would be led to believe the purported agent has authority to bind the principal.   *See Gaines*, 235 S.W.3d at 182.   "Because an agent's authority is presumed to be co-extensive with the business entrusted to his care, it includes only those contracts and acts incidental to the management of the particular business with which he is entrusted[,]" "the relevant issue then is not merely the existence of an agency relationship, but the scope of that agency."   *Id.* at 184-185.   Under the doctrine of ostensible or apparent authority, an entity may be liable for the conduct of one who is not its agent or who has acted beyond the scope of his or her authority as an agent where the principal acts in a manner that under the circumstances should equitably prevent it from denying the existence of an agency relationship. *Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998).   The principal's behavior must cause justifiable reliance and result in harm.   *Id.* at 948; *see also PanAmerican Operating Inc., v. Maud Smith Estate*, 409 S.W.3d 168, 172 (Tex. App.—El Paso 2013, pet. denied); *Eckler v. General Council of the Assemblies of God*, 784 S.W.2d 935, 939 (Tex. App.—San Antonio 1990, writ denied).

Authority can be granted without creating an agency relationship; i.e., granting authority to take some actions but not the authority to bind the principal in any way by taking such action.   For

example, authorizing someone to share office space to conduct their independent business or authorizing someone to use an email account.  *See United Residential Properties, L.P. v. Theis*, 378 S.W.3d 552, 564-565 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (collecting cases) (reversing judgment entered after bench trial, finding no evidence of agency), *citing CSX Transp. Inc. v. Recovery Express, Inc.,* 415 F.Supp.2d 6, 11-12 (D. Mass. 2006) (order granting motion for summary judgment) (collecting cases), *River Mountain at Breckenridge, Inc. v. Mut. Of N.Y. Fin. Servs.*, No. C14-94-00084-CV, 1994 WL 652766, at *2-4 (Tex. App.—Houston [14th Dist.] Nov. 17, 1994, writ denied) (not designated for publication) (no evidence of apparent authority when alleged agent had an office at the alleged principal's place of business, distributed the principal's business cards, and used the principal's stationary.), and *Edington v. S. Old Line Life Ins. Co.*, 55 S.W.2d 579, 580 (Tex. Civ. App.—Amarillo 1932, no writ) (no evidence of agency or scope of authority arose from use of letterhead and business card with company name).  Defendant does not dispute that it authorized Belichesky to advertise within its branch and authorized him to use its conference room to meet with perspective clients regarding the advertised services.

There is no evidence that Belichesky held himself out as an employee or agent of Defendant or as having authority to act on or perform trust and estate business on Defendant's behalf. [12]   Thus, there is no evidence that Defendant knowingly allowed him to do so. Consequently, Plaintiff's vicarious liability argument must rest on the alternative ground that Defendant acted with such a lack of ordinary care as to clothe Belichesky with the indicia of authority to act on Defendant's behalf and bind Defendant by his provision of trust and estate planning services.

---

[12]  Plaintiff's deposition testimony provides evidence to the contrary, affirming that Belichesky never represented to her that he was an employee of Compass bank, and that she never saw him wearing a Compass bank shirt or nametag. (Doc. 79, Exh. J at 56-57)

"A Court may consider only the conduct of the principal leading a third party to believe that the agent has authority[.]"  *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). Further, "[o]ne to whom a representation is not directed is not entitled to rely on that representation."  *Spring Garden 79U, Inc.*, 874 S.W.2d at 950, citing *Westcliff Co., Inc. v. Wall*, 267 S.W.2d 544, 546 (Tex. 1954); *see also First American Title Ins. Co. of Texas v. Willard*, 949 S.W.2d 342, 349 (Tex. App.—Tyler 1997, writ denied).   Plaintiff provides a lengthy recitation of facts and evidentiary support regarding Defendant's conduct as it related to Belichesky's interactions with Jesus Munoz.   (Doc. 82:2-4, Exhs A, V at 5-7, 14, 19, 26-28, W at 11-12)   To the extent Plaintiff presents such evidence to support her argument that Defendant's conduct caused Plaintiff to believe that Belichesky had the authority to act on Defendant's behalf and bind Defendant, Plaintiff's efforts are misplaced.   Not only was such conduct not directed towards Plaintiff, there is no evidence that Plaintiff was aware of Defendant's conduct relating to Belichesky's interactions with Munoz, such that it could have played any part in leading Plaintiff to believe that Belichesky was Defendant's agent.   Nor do the alleged facts regarding Defendant's conduct with respect to Belichesky's interactions with Munoz provide evidence raising a material question of fact as to any of the other elements required to establish vicarious liability through apparent agency and authority.

Focusing only on Defendant's conduct related to Belichesky's interactions with Plaintiff, alleged by Plaintiff as clothing Belichesky with the indicia of authority to act on Defendant's behalf so as to bind Defendant by his actions, the Court finds such conduct to be legally insufficient to establish apparent authority to provide trust/estate planning services on Defendant's behalf necessary to render Defendant vicariously liable for Belichesky's actions in providing such service.   Authorizing the posting of an advertisement in Defendant's lobby by the tellers' stand

21

and the one-time use of Defendant's conference room for an initial meeting with Plaintiff is substantially less than evidence found to be legally insufficient by other courts, including formally sharing office space on a regular basis, authorizing the use of an email with the defendant's domain name for conducting independent business, providing company letterhead and business cards or access to a company car.   *See United Residential Properties, L.P.,* 378 S.W.3d at 564565.   It also lacks the indicia of authority present in cases relied upon by Plaintiff such as *PanAmerican Operating* where the defendant had a formal business relationship with its agent, employing Wormser as an independent contractor, providing him office space, an email, and a landline, having the ability to monitor his emails, having knowledge of Wormser's activities in negotiating a lease on defendant's behalf, receiving reports the defendant required Wormser to file which described his efforts in securing the disputed lease from Maud Smith on defendant's behalf, and doing nothing to dissuade Elder from believing, as he had no reason not to as such powers were *prima facie* coextensive with the business actually entrusted to Wormer's care, that Wormser had the authority to execute leases on PanAmerican's behalf.   (*See* Doc. 82:21-22, citing *PanAmerican*, 409 S.W.3d at 173-176)

Viewing the summary judgment evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that there is no material issue of fact precluding a finding as a matter of law that apparent authority did not exist by which to hold Defendant vicariously liable for the acts of Belichesky regarding Plaintiff's fraud claims.   Thus, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiff's fraud claims based on vicarious liability.

### B.  Direct Liability

If Plaintiff's claims of fraud, fraudulent inducement, or constructive fraud are to survive

summary judgment, they must rest solely on Defendant's direct liability for its own actions.

Defendant argues that it is entitled to judgment as a matter of law on all such claims.  (Doc.

79:14-20)   Defendant contends that Plaintiff has neither identified nor provided evidence of any

actionable statement or misrepresentation made by or on behalf of Defendant on which Plaintiff

relied.  (Doc. 79:14)   Plaintiff admits that no Compass employee ever spoke with Plaintiff at any

time about estate planning services, trust services, legal services and/or any similar types of

services.  (Doc. 79:15, Exh. J. at 62, 331, 337)   Plaintiff's fraud claims are based exclusively on

Defendant's alleged representation that it was authorized and qualified to engage in the practice of

law, when in fact, it was not.[13]  (Doc. 1-1:38-39)   Such misrepresentation and/or omission,

Plaintiff alleges, was contained on the flyer that Plaintiff saw, which was placed on Defendant's

teller counter, advertising "estate/trust planning, free consultation."   (Doc. 1-1:33)

### 1.       Common Law Fraud

To establish a common law fraud claim, Plaintiff must prove:

(1)   that a material representation was made [by defendant]; (2) the representation
was false; (3) when the representation was made, the [defendant] knew it was false
or made the representation recklessly[14] without knowledge of its truth and as a
positive assertion; (4) the [defendant] made the representation with the intent that
the other party should act upon it [or intended to induce the party's reliance on the

---

13 Under Plaintiff's vicarious liability theory, "it" encompassed both Defendant and Belichesky.   The Court found,
*supra*, that Defendant's conduct did not create apparent agency or authority to establish vicarious liability.   Thus, out
of an abundance of caution, the Court will address "it" as referring to either Defendant or Belichesky.

14 "A representation is recklessly made if the speaker knows that he does not have sufficient information or basis to
support it." *American Dream Team, Inc. v. Citizens State Bank*, 481 S.W.3d 725, 739 (Tex. App.—Tyler 2015, pet.
pending), *citing Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex. 1998) (or if he
realizes that he does not know whether or not the statement is true).

representation]; (5) the [plaintiff] acted in [justifiable] reliance on the representation; and (6) the [plaintiff] thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (footnote and alterations not in the original); *see also Exxon Corp. v. Emerald Oil & Gas Co. L.C.*, 348 S.W.3d 194, 217 (Tex. 2011); (Doc. 79:16).

Plaintiff has failed to produce evidence that Defendant made the alleged representation that either Defendant or Belichesky was authorized and qualified to engage in the practice of law, when in fact, Defendant or Belichesky was not.  First, there is no evidence that the flyer was a representation made by or on behalf of Defendant; only that it was posted in Defendant's bank.[15]  It is undisputed that the flyer itself did not mention Defendant or contain Defendant's logo or any indicia that it was created by or endorsed by Defendant.   Thus, there is no evidence in the record to support a finding for Plaintiff on the first element of her common law fraud claim.

As to the third element, even assuming, arguendo, that representations in the flyer were made by or on behalf of Defendant, there is no evidence in the record to support a finding that Defendant knew that Belichesky was not a licensed attorney qualified to provide trust/estate planning services at the time Plaintiff saw the flyer and engaged Belichesky's services.   Nor was the alleged misrepresentation a positive assertion.[16]  Plaintiff's deposition testimony and evidence regarding the content of the flyer she saw reflects that it stated only "estate/trust planning, free

---

15 Nor is there evidence of any representation not on the alleged flyer made by Defendant about estate/trust planning or Belichesky conducting a free consultation or providing such services.   There is no evidence of any other document that Plaintiff saw, containing a statement made by or on behalf of Defendant, regarding estate/trust planning or Belichesky conducting a free consultation or providing such services.   Plaintiff's deposition testimony reflects that she did not speak with any of Defendant's employees about estate planning services, trust services, legal services, and/or any similar type of service.   (Doc. 79, Exh. J at 62, 331)    Plaintiff did not communicate with Defendant regarding Belichesky until January 2013.   (Doc. 79:18, Exh. J at 162)   Thus, Defendant could not have made any misrepresentation on such topics or had the opportunity to omit information on such topics.   (*See* Doc. 79:17)

16 Notably, the undisputed evidence reflects that the positive assertions made on the flyer Plaintiff saw were not false.  Plaintiff did receive a free consultation about trust/estate planning services by calling the phone number listed.

24

consultation" with a phone number.   (Doc. 80, Exh. D at 51-52)   Based on Plaintiff's evidence,

nowhere on the flyer was there a positive assertion that the person providing such free consultation

or services would be licensed to practice law or qualified to provide such services.   *See id.*   Nor

does Plaintiff allege, or the evidence reflect, that Defendant otherwise affirmatively, explicitly, or

expressly made the alleged representation to Plaintiff.   Thus, there is no evidence in the record to

support a finding for Plaintiff on the third element of her common law fraud claim.

Viewing the summary judgment evidence and the reasonable inferences to be drawn

therefrom in the light most favorable to Plaintiff, the Court finds that there is no material issue of

fact precluding judgment as a matter of law for Defendant on Plaintiff's claim of common law

fraud.

### 2.        Fraudulent Inducement

To recover on her fraudulent inducement claim, Plaintiff must prove all the elements of

common law fraud above, and additionally establish that she actually entered into a binding

agreement with Defendant based on the alleged representation.   (Doc. 79:18-19, citing *Haase v.*

*Glazner*, 62 S.W.3d 795, 797-798 (Tex. 2001)).

As discussed above, Plaintiff failed to provide evidence to satisfy all the elements required

for a common law fraud claim, and thus, by extension, a fraudulent inducement claim.

Additionally, the only contract between Plaintiff and Defendant for which there is evidence in the

record is the Deposit Agreement attached to her Second Amended Petition, which limits itself to a

depositor-bank relationship.   (Doc. 79:19)   Further, to the extent Plaintiff complains that

Defendant's alleged misrepresentation induced Plaintiff to enter into an agreement with

Belichesky, the Court has not found, and Plaintiff has not identified, any case holding that a

fraudulent inducement claim may be brought against a party other than the one with whom the

25

plaintiff entered a binding agreement.   Thus, Defendant has established that there is no evidence in the record to support the additional element required for a fraudulent inducement claim and Plaintiff has failed to establish that there is an issue of material fact precluding judgment for Defendant as a matter of law.

Viewing the summary judgment evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that there is no material issue of fact precluding judgment as a matter of law for Defendant on Plaintiff's claim of fraudulent inducement.

### 3.        Constructive Fraud

Constructive fraud "requires proof of (1) a fiduciary relationship between plaintiff and defendant; (2) a breach of such fiduciary duty, and (3) damages arising from the breach, either injury to the plaintiff or benefit to defendant."   *Davis-Lynch*, 472 S.W.3d at 60.

"[C]onstructive fraud is the breach of some legal or equitable duty which, [] the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests," i.e., it violates a fiduciary relationship.   *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964) (addressing contingency fee agreement in divorce proceedings).   It might also be a breach of an informal fiduciary relationship: a confidential relationship, moral, social, familial, or personal, which exists prior to and apart from the transaction that is the basis of the suit.   *See Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998); *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (finding evidence insufficient to impose an informal fiduciary relationship).   Such a relationship is extraordinary and will not be found merely because one subjectively trusts another.   *In re K.D.*, 471 S.W.3d 147, 160-161 (Tex. App.—Texarkana, 2015, no pet.).   "Where the underlying facts are undisputed, determination of the existence, and breach,

of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer*, 167 S.W.3d at 330.

The relationship between a bank and its customer does not generally create a special or fiduciary relationship. *Fleming v. Texas Coastal Bank of Pasadena*, 67 S.W.3d 459, 461 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (no fiduciary duty of bank or duty to disclose to customer where no evidence of long-standing relationship of trust that might create an exception and where complaints do not relate to customer's transaction with the bank and bank had limited role in transaction); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp*., 819 S.W.2d 607, 610 (Tex. App.—Houston [1st Dist.] 1991, no writ).

Plaintiff has not identified any evidence supporting the finding of either a formal or informal fiduciary duty to satisfy a claim for constructive fraud.   The Deposit Account Agreement Plaintiff had with Defendant states that "no fiduciary, quasi-fiduciary or other special relationship exists between you and us." (Doc. 79:20, citing Doc. 1-1:43-70)   Additionally, Plaintiff's deposition testimony reflects that she never communicated with anyone at Compass concerning Belichesky or legal services in general prior to hiring Belichesky.   (Doc. 79:17, Exh. J at 162) None of Defendant's employees ever spoke with Plaintiff about trust or estate planning, legal, or any similar type of services, or attended any meetings between Plaintiff and Belichesky.   (*Id*., Exh. J at 62)   Similar to the facts in *Fleming*, Plaintiff's complaints do not relate to her customer transaction with Defendant and the bank had an extremely limited role regarding Plaintiff's transaction with Belichesky: allowing a sign to be posted and providing its conference room for Belichesky to conduct his free consultations.   Thus, Defendant has demonstrated that that there is no evidence to support the first, and thus the subsequent, elements of constructive fraud and

27

Plaintiff has failed to establish that there is a question of material fact precluding summary judgment for Defendant.

Viewing the summary judgment evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that no material issue of fact exists and that Defendant is entitled to judgment as a matter of law on Plaintiff's claim of constructive fraud.

### 4.      Fraud by Nondisclosure

To succeed on a common law fraud claim based upon nondisclosure, Plaintiff must prove that

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

*Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 849-850 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Bradford v. Vento*, 48 S.W.3d 749, 754-755 (Tex. 2001); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

The Court reiterates its finding, supra, that there is no evidence to support the finding of fiduciary duty or a confidential relationship to support a finding that Defendant had a duty to disclose that Belichesky was not a licensed attorney to satisfy the second element.   Nor is there evidence in the record to support a finding that Defendant knew that Plaintiff was ignorant of the fact or that Plaintiff did not have an equal opportunity to discover them to satisfy the fourth element.   In fact, there is no evidence in the record to support a finding that Defendant knew that

28

Belichesky was not a licensed attorney at the time Plaintiff saw the flier and engaged his services such that Defendant would have been able to disclose such facts to Plaintiff even had Defendant known that Plaintiff was ignorant of such fact or believed that she did not have an equal opportunity to discover such fact.   There is no evidence that Plaintiff in fact did not have an equal opportunity to discover such fact.   Thus, Defendant has demonstrated that that there is no evidence to support at least one element of fraud by nondisclosure, and Plaintiff has failed to establish that there is a question of material fact precluding summary judgment for Defendant.

Viewing the summary judgment evidence and the reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that there is no material issue of fact and that Defendant is entitled to judgment as a matter of law on a theory of fraud by nondisclosure.

## IV.      Defendant's Counterclaim for Attorney Fees

Defendant's counterclaim for attorney fees pursuant to Rule 11 of the Federal Rules of Civil Procedure was not addressed by the cross motions for summary judgment.   (Docs. 14:13-14; 79; 80)   Federal Rule of Civil Procedure 11   provides that the procedure for asserting a claim for sanctions under Rule 11 is by motion for sanctions.   Fed. R. Civ. P. 11(c)(2).   Federal Rule of Civil Procedure 54(d) provides that the procedure for asserting a claim for attorney fees is by motion filed within fourteen days after the entry of judgment.   Fed. R. Civ. P. 54(d)(2).   This procedure applies unless a federal statute, the rules, or a court order provides otherwise or unless substantive law requires those fees be proved at trial as an element of damages.   Defendant has identified no federal statute, rule, or court order relevant to this case that would support a deviation from the motion practice provided by the rules.   At this time, Defendant's counterclaim for

attorney fees is dismissed without prejudice to Defendant filing appropriate post judgment motions for sanctions and attorney fees.

**V.      Issues Not Addressed**

The parties briefed summary judgment arguments regarding Plaintiff's request for mental anguish damages.   (Docs. 79:13-15; 82:19-20)   Because such recovery is tied to Plaintiff's DTPA claim, which the Court finds to be barred by the statute of limitations, the issue of mental anguish damages is moot and the Court will not address the parties' arguments on that issue.

Defendant filed two motions related to summary judgment briefing, seeking to strike Plaintiff's improper summary judgment evidence (Doc. 83) and Plaintiff's improper summary judgment evidence attached to Plaintiff's response (Doc. 87).   Because even in viewing all of the evidence, including that disputed by Defendant, and reasonable inferences to be drawn therefrom in the light most favorable to Plaintiff, the Court finds that Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims, the Court does not address Defendant's evidentiary motions.

## CONCLUSION

For the reasons set forth above, the Court finds that the following orders should be entered:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. 80) is **DENIED**;

(2) Defendant's Second Motion for Summary Judgment   (Doc. 79) is **GRANTED**;

(3) Defendant's Counterclaim for attorney fees is **DISMISSED** without prejudice to Defendant filing appropriate motions under Federal Rules of Civil Procedure 11 and 54;

(4) Judgment is **ENTERED** for Defendant;

(5) All other pending motions are **DENIED** as **MOOT**;

**SO ORDERED.**

**SIGNED** and **ENTERED** on May 24, 2016.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE